IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

SARAH M. TOTO,                    )
                                  )
              Plaintiff,          )
                                  )
v.                                )     Case No. CIV-16-336-RAW-KEW
                                  )
NANCY A. BERRYHILL, Acting        )
Commissioner of Social            )
Security Administration,          )
                                  )
              Defendant.          )

**REPORT AND RECOMMENDATION**

Plaintiff Sarah M. Toto (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 33 years old at the time of the ALJ's latest decision.  Claimant obtained her GED.  Claimant has worked in the past as a cashier, bus driver, customer service agent, customer care agent, and program aide.  Claimant alleges an inability to work beginning February 16, 2011, as amended by Claimant, due to limitations resulting from degenerative disc disease, bilateral carpal tunnel syndrome, non-insulin dependent diabetes mellitus, obesity, migraine syndrome, bipolar disorder, and personality

disorder.

## Procedural History

On January 5, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. After an administrative hearing, Administrative Law Judge ("ALJ") Edmund Werre issued an unfavorable decision on April 27, 2012. By Order and Judgment entered September 30, 2014, the ALJ's decision was reversed and the case was remanded for further proceedings by this Court.

On November 26, 2013, Claimant filed second applications for both Title II and XVI benefits. These requests were found by the ALJ to be duplicative of the prior applications and consolidated with those applications. (Tr. 884). On June 10, 2015, ALJ Werre conducted an administrative hearing in Tulsa, Oklahoma. On August 24, 2015, the ALJ issued an unfavorable decision. On June 2, 2016, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential

4

evaluation.  He determined that while Claimant suffered from severe impairments, she retained the residual functional capacity ("RFC") to perform medium work with limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly evaluate Claimant's mental RFC and include the limitations found by the consulting physicians; (2) discounting the opinion of Dr. Edgar Kranau, a consultative psychologist; and (3) failing to incorporate all of Claimant's physical impairments in the RFC.

## Consideration of the State Agency Physicians' Opinions

In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc disease, bilateral carpal tunnel syndrome, non-insulin dependent diabetes mellitus, type II, obesity, migraine syndrome, bipolar disorder, and personality disorder, not otherwise specified/borderline personality disorder. (Tr. 887).  The ALJ concluded that Claimant retained the RFC to perform medium work with lifting no more than 50 pounds at a time, frequent lifting or carrying up to 25 pounds, standing/walking for six hours out of an eight hour workday, sitting for six hours eight hour workday, no climbing ladders, ropes, or scaffolds, and not exposure to hazards such as unprotected heights and being around dangerous moving machinery.  Claimant was found to be able to

5

understand, remember, and carry out simple and some complex instructions consistent with semi-skilled work and was able to relate to co-workers and supervisors for work purposes only with "no to minimal" contact with the general public. The ALJ concluded that Claimant could adapt to a work setting with these limitations and her medications would not prevent her from remaining reasonably alert in a work setting. (Tr. 890).

After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of hand packager, laundry classifier, and sorter, all of which were found to exist in sufficient numbers in both the regional and national economies. (Tr. 904). As a result, the ALJ found Claimant was not disabled from February 16, 2011 through the date of the decision. Id.

Claimant contends that the ALJ did not follow this Court's directive in the first appeal of the denial of benefits. In the prior appeal, the ALJ reached a very similar RFC, including a finding that Claimant could perform medium work and "was able to understand, remember, and carry out simple and some complex instructions and was able to relate and interact with co-workers and supervisors on a work-related basis only with no or minimal interaction with the general public." (Tr. 1018). In this Court's decision, it was noted that the ALJ gave "significant weight" to the opinions of the state agency psychologists Dr. Gary Lindsay and Dr.

6

James Levasseur but did not incorporate their findings in Section I of the Mental Residual Functional Capacity Assessment ("MRFCA") forms these consultants completed. (Tr. 1021-22). In particular, Dr. Lindsay found Claimant was markedly limited in the ability to interact appropriately with the general public and Dr. Levasseur found she was moderately limited in numerous areas including the ability to get along with co-workers and ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. 1020-21).

Defendant cites to cases decided after this Court's prior decision which indicate how a court is to interpret the various sections of the MRFCA form. In particular, the discussion in the case of <u>Carver v. Colvin</u>, 600 Fed.App'x 616 (10th Cir. 2015) is illuminating.

> The MRFCA itself states that Section I "is for recording summary conclusions derived from the evidence in the file" and directs that "[d]etailed explanation of the degree of limitation for each category . . . is to be recorded in Section III." Aplt. App., Vol. II at 237. This tracks several provisions of the Social Security Administration's Program Operations Manual Systems (POMS).1 The POMS provides that Section III of the MRFCA, not Section I, is for recording a medical consultant's formal mental RFC assessment, and that adjudicators are to use the Section III narrative as the RFC assessment:
>
>> The purpose of section I . . . is chiefly to have a worksheet to ensure that the

7

> psychiatrist or psychologist has considered
> each of these pertinent mental activities and
> the claimant's or beneficiary's degree of
> limitation. . . . It is the narrative written
> by the psychiatrist or psychologist in Section
> III . . . that adjudicators are to use as the
> assessment of RFC.
>
> POMS DI 25020.010 B.1.; see also POMS DI
> 24510.060 B.4.a. (stating that "Section III .
> . . is for recording the mental RFC
> determination [and where] . . . the actual
> mental RFC assessment is recorded"); POMS DI
> 24510.065 A. (substantially the same).

But this does not mean that an ALJ can turn a blind eye
to moderate Section I limitations. In a note to its
description of the "moderately limited" checkbox, the
POMS states that "[t]he degree and extent of the capacity
or limitation must be described in narrative format in
Section III [of the MRFCA]." POMS DI 24510.063 B.2.
(boldface omitted) (emphasis added). The POMS also
provides that "[t]he discussion of all mental capacities
and limitations in [Section III] must be in narrative
format," and that Section III is for "explaining the
conclusions indicated in section I, in terms of the
extent to which these mental capacities or functions
could or could not be performed in work settings." POMS
DI 24510.060 B.4.a. & B.4.b. Thus, if a consultant's
Section III narrative fails to describe the effect that
each of the Section I moderate limitations would have on
the claimant's ability, or if it contradicts limitations
marked in Section I, the MRFCA cannot properly be
considered part of the substantial evidence supporting an
ALJ's RFC finding. Several district courts in this
circuit have reached a similar conclusion based on
reasoning we consider persuasive. See, e.g., Gorringe v.
Astrue, 898 F.Supp.2d 1220, 1224-25 (D.Colo. 2012);
Baysinger v. Astrue, No. 11-cv-00333-WYD, 2012 WL
1044746, at *5-6 (D.Colo. Mar. 28, 2012) (unpublished).

Carver v. Colvin, 600 F. App'x 616, 618-19 (10th Cir.

8

2015).

The ALJ in this case explained that he believed the findings of limitation in Section III governed his decision in the RFC because Section I has no defined degree of limitation on the various functions which affect Claimant's ability to engage in basic work activity.  The explanation of the interaction of Section I and Section III in the <u>Carver</u> case indicates that if the Section III narrative inadequately addresses the summary restrictions found in Section I, it cannot be relied upon to provide substantial evidence in support of the RFC.

In this case, the ALJ again relied upon Dr. Lindsay's and Dr. Levasseur's opinions in reaching his conclusions in the RFC.  The question before this Court is whether the Section III narrative findings of these consultants adequately addressed the Section I summary restrictions.  In Dr. Levasseur's MRFCA, the moderate restrictions concerning concentration, attention, and maintaining attendance, scheduling, and completing a workday and workweek are addressed in the finding in Section III that Claimant is "able to produce concentrated effort needed to complete most tasks most of the time with some transient disruption of sustained concentration expected." (Tr. 762).  The moderate restriction on instructions is addressed in the finding Claimant is "able to understand and

follow instructions" but the finding does not recognize any restriction in this functional area despite the finding of moderate restriction in Section I. (Tr. 761-62). The moderate restriction in getting along with co-workers or peers without distracting them found in Section I is addressed adequately in the finding Claimant is "able to get along with others with occasional upsets noted." Id. The adaptation restriction is also adequately addressed. Id.

As for Dr. Lindsay's MRFCA form, he found moderate restrictions in the ability to understand, remember, and carry out detailed instructions which Dr. Lindsay addressed in Section III by limiting Claimant to simple and some complex tasks. (Tr. 711, 713). The marked restriction in interacting with the general public is addressed in the "limited contact w/the general public restriction." (Tr. 712-13). The moderate restriction in responding to criticism from supervisors and getting along with co-workers is recognized in the finding Claimant "can relate to others on an as needed, superficial work basis." Id. Moreover, none of the jobs identified by the ALJ all require interaction with the general public - the area Claimant is most restricted. *See*, *Dictionary of Occupational Titles ("DOT")* #920.587-018 (hand packager); *DOT* #361.687-014 (laundry classifier); *DOT* #521.687-086 (sorter).

"[R]esidual functional capacity consists of those activities

that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment was supported by substantial evidence. As a result, this Court cannot conclude that the ALJ erred in the formulation of his RFC relying upon the consultants' opinions.

### Consideration of Dr. Kranau's Opinion

Claimant also contends the ALJ improperly discounted the

opinion of Dr. Edgar Kranau who completed an MRFCA on May 19, 2015 after an examination of Claimant. (Tr. 1633-36). Dr. Kranau found Claimant was markedly limited in 14 of the 19 functional areas on the form. Id. The ALJ related Dr. Kranau's findings in significant detail and noted several deficiencies including (1) the report is incomplete because it lacks a Section III; (2) the findings from the examination were largely normal; (3) Dr. Kranau made no diagnosis; and (4) attempting to convert the degree of limitation in Section I to percentages while omitting the narrative findings required by an MRFCA. (Tr. 898).

The ALJ is correct that Dr. Kranau failed to provide a corresponding narrative in the MRFCA which would explain the level of restriction brought about by the significantly limiting findings of marked findings. This Court is aware that several iterations of the MRFCA exist in the Social Security arena. It appears essential from the Carver case, however, that the narrative explanation which directly corresponds to the Section I summary be present to be supported. Additionally, any support which might arise from his examination report is muted. Claimant was open, friendly, and cooperative during the examination. (Tr. 1638). Her mood was slightly anxious but appropriate for the situation with normal range and intensity. (Tr. 1639). She had no difficulty relating to Dr. Kranau and responded to questions in a goal-directed manner. Her

12

coping skills were somewhat limited and she was found to be overwhelmed by moderate levels of stress. Dr. Kranau then made his findings of marked limitation. <u>Id</u>.

The ALJ is required to consider every medical opinion in reaching his assessment and must provide specific, legitimate reasons for rejecting an opinion. <u>Doyal v. Barnhart</u>, 331 F.3d 758, 764 (10th Cir. 2003). The ALJ gave several legitimate bases for rejecting or discounting Dr. Kranau's rather extreme restrictions in Claimant's ability to engage in the various functions of work activity. This Court would also note that Dr. Kranau's opinion after a single visit was also significantly more restrictive than that of other reviewing or consulting physicians. This Court finds no error in the ALJ's assessment of Dr. Kranau's opinion.

### Claimant's Impairments

Claimant also contends the ALJ failed to incorporate any restrictions attributable to her carpal tunnel syndrome after finding the condition to be a severe impairment at step two. The ALJ specifically found that Claimant had not received consistent treatment for carpal tunnel syndrome since the amended onset date of disability and that the condition formed the basis for limiting Claimant to medium work in the RFC. (Tr. 901). The ALJ also noted Claimant had recently claimed problems with her hands, arms, and

13

wrist for which no treatment was received. The ALJ discounted Claimant's statements as inconsistent with the medical record. Id. The ALJ's findings were supported by the record and his discrediting of Claimant's restrictions due to this condition were within his purview. See Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir. 1988)(an ALJ may consider "the extensiveness of the attempts (medical or nonmedical) to obtain relief" in assessing the credibility of a limiting condition).

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 16th day of January, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE

14